**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

PICNICS, INC.,

Plaintiff,

v. CIVIL ACTION NO. 5:11-cv-00972

J. CRAIG HOLLAND,

Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendant's *Motion for Summary Judgment* (Document 11), memorandum in support (Document 12), and enclosed exhibits. Upon careful consideration of the motion, the memoranda in support and in opposition, the reply, and the entire record, the Court finds, for the reasons stated herein, that Defendant's motion should be granted.

## ***I. BACKGROUND***

Plaintiff, Picnics, Inc., doing business as Old Spruce Realty ("Picnics"), is a licensed real estate brokerage that was hired by Defendant, J. Craig Holland ("Holland"), to find a buyer for his real property located near White Sulphur Springs, West Virginia. ("Compl." (Document 1-1) at 3); ("Def.'s Mem. Ex. 2") (Document 12 at 15.) On December 21, 2009, Plaintiff and Defendant entered into an "Exclusive Right to Sale Listing Agreement" concerning said property. (*Id.*) Paragraph 3 of the Agreement states in pertinent part:

> LISTING PRICE & TERMS: Seller lists the property at a price of $ To Be Determined on the following terms: (√) cash . . . Seller agrees to sell the property for the Listing Price or for any other price or any other terms acceptable to Seller.

> Term: Agent is hereby granted exclusive right to sell the property for a period of 2 ½ years from (Date) 12-21-09 until midnight, (Date) 06-23-12.

(*Id.*) Paragraph 4 states:

> AGENT COMPENSATION: Seller agrees to pay Broker as compensation for services rendered a fee of 5% percent of the accepted purchase price, IF A) Broker procures a Buyer during the term hereof on the terms specified herein or on any other terms acceptable to Seller(s). B) The Property is sold, exchanged, or otherwise transferred during the term hereof, by Seller, or through any other source. C) The Property is withdrawn from sale, and transferred, conveyed, leased, without the consent of Broker, or made unmarketable by Seller's voluntary act during the term thereof or any extension thereof. D) A sale, exchange or other transfer of the property is made by Seller within Six Months after the termination of this agreement or any extension thereof, to persons with who Broker shall have negotiated during the term hereof. However, this shall not apply if, during the term of said protection period, a valid Exclusive Listing Agreement is entered into with another licensed real estate Broker.

(*Id.*) On December 23, 2009, Plaintiff and Defendant executed an "Addendum to Listing Agreement with Craig Holland." (Def.'s Mem. Ex. 3) (Document 12 at 17.) The Addendum states that if the Property is sold to Jim Justice, the Greenbrier Hotel, or any entity connected with either, the commission will be 2 ½ %. (*Id.*) It also states that "listing agent Larry Butler will be in close contact with Mr. Holland and [will] follow his instructions as to the marketing of this property." (*Id.*) The Addendum further provides that "this listing agreement will remain in effect for 2 ½ years, or until the deed of trust, between J. Craig Holland and Girlonza W. Scott and Katherine Jane Scott, is paid in full." (*Id.*) If, the real estate is not sold by that time, "there will be an auction by the Scotts to satisfy [the] deed of trust [and] Seller agrees to pay a 5% commission upon sale." (*Id.*)

On June 3, 2010, Plaintiff and Defendant executed an "Exclusive Right to Sell Listing Agreement Renewal and/or Amendment." (Def.'s Mem. Ex. 4) (Document 12 at 19.) The Listing Agreement was amended as follows: "Price shall be changed from $0 to $4,500,000.00." (*Id.*)

On October 11, 2010, Defendant faxed a signed type-written letter to Plaintiff, requesting it to "de-list [his] listing, MLS # 10-776 Ac's on Kate's Mountain, Greenbrier County, West Virginia" and to have the listing "[t]ake[n] down from any and all websites, places of notice and or other sites where the real estate is advertised." (Def.'s Mem. Ex. 5) (Document 12 at 21) (original altered.) Defendant also instructed that "if for some reason you cannot do this then I instruct you here to alter the price to the sum of $20,000,000." (*Id.*) (original altered.) Defendant stressed that "these instructions are binding as of now [and] [t]he restrictions will remain in effect with that new price until the property is fully de-listed." (*Id.*) (original altered.) Moreover, Defendant wrote "[p]lease re-lease me from contract now." (*Id.*) (original altered.) Defendant states "[a]s for the listing contract, I have hereby and in email dated Oct, 11, 2010, requested that you allow me to be freed from it effective immediately for reasons many and of substance that reflect my rights and competent representation." (*Id.*) (original altered.)

On October 12, 2010 at 7:41 a.m., Plaintiff, through Girlonza Scott, co-owner of Old Spruce Realty, emailed Defendant, "[a]s your listing agent, [p]lease be advised that your listing has been reentered at 478 acres @ 20 million." (*Id.*) The email was "signed" "G Scott." (*Id.*) (Def.'s Mem. Ex. 6) (Document 12 at 23.) Defendant responded by email later that morning stating "please de list the property asap as I have instructed you." (*Id.*)

On October 14, 2010, Plaintiff, through Defendant's "new listing agent" confirmed that "[Defendant's] listed property has been removed from websites and [Plaintiff] ha[s] cancelled marketing it." ("Pl.'s Resp. Ex. H") (Document 15-2 at 24.) However, at the end of the email, Plaintiff indicated that "[One of Plaintiff's agents] will be meeting soon with Mr. Justice." (*Id.*) Communication continued between the parties concerning the possible sale of Defendant's

property to Mr. Justice. (*See,* ("Pl.'s Resp. Ex. I") (Document 15-2 at 26-31); ("Pl.'s Resp. Ex. K") (Document 15-3 at 5-7.))

By letter dated April 14, 2011, Plaintiff presented Defendant and his counsel with a copy of a "Real Estate Purchase Agreement (Land)" executed by Mr. Justice for the sum of four million five hundred thousand dollars ($4,500,000.00). (Def.'s Mem. Ex. 7) (Document 12 at 24-33.) Defendant did not execute the agreement (Def.'s Mot. at 3), and on April 20, 2011, rejected the offer. ("Pl.'s Resp." at 4) (citing ("Pl.'s Resp. Ex. M") (Document 15-3 at 16.)) Although negotiations continued after Defendant indicated he was willing to sell the land without restriction and was "now ready to sign off[,]"(Pl.'s Resp. Ex. P") (Document 15-3 at 26), he did not execute a purchase contract and no other executed purchase agreement was presented to him. Defendant asserts that "[his] real estate has not been sold or otherwise transferred." (Def.'s Mot. at 3.)

## *II. PROCEDURAL HISTORY*

On October 17, 2011, Plaintiff filed its Complaint in the Circuit Court of Greenbrier County, West Virginia, against Defendant to recover a commission of one hundred twelve thousand five hundred dollars ($112,500.00) allegedly owed to it under the terms of the real estate listing agreement. (Compl. at 1-3.) Plaintiff alleges it has been "wrongfully denied its commission" because Defendant refused to execute a purchase agreement signed by Mr. Justice for four million five hundred thousand dollars ($4,500,000.00) and to comply with his listing agreement as revised. (*Id.* at III-IV.)

On December 9, 2011, Defendant removed to the Southern District of West Virginia pursuant to 28 U.S.C. §1446. ("Notice of Removal" (Document 1) at 1-2.)[1] Defendant contends

1 Defendant asserts that "[o]n November 11, 2011, a summons and a complaint . . . were left on the porch of the

that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because "this is an action between citizens of different states and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs." (*Id.* at 2.)[2] In support, Defendant states that he believes Plaintiff is a West Virginia corporation with its principal place of business in West Virginia. Defendant also indicates that he is a resident and citizen of the State of Washington. Plaintiffs did not challenge the removal. Defendant filed his answer on December 9, 2011. (Document 2.)

On September 5, 2012, Defendant filed his *Motion for Summary Judgment* ("Def.'s Mot.") (Document 11), supporting memorandum ("Def.'s Mem.") (Document 12), and attached exhibits. On December 14, 2012, Plaintiff filed its response in opposition ("Pl.'s Resp.") (Document 15) and attached exhibits. On December 21, 2012, Defendant filed his Reply ("Def.'s Reply") (Document 16.)

## *III. JURISDICTION*

The threshold question for the Court to consider is whether it has federal subject matter jurisdiction in this case. By statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendant removed on the basis of Section 1332, which provides, in pertinent part, that "[t]he district courts shall have original

residence of defendant's mother, in the State of California." (Notice of Removal at 2.) Moreover, a copy of the docket sheet from the Circuit Court of Greenbrier County, West Virginia, reveals that the summons and complaint were given to attorney for service on October 21, 2011, and were reissued on November 14, 2011. ("Docket Sheet" (Document 1-2) at 2.)

2 Defendant appears to rely on Plaintiff's Complaint, wherein Plaintiff seeks an Order requiring Defendant to pay Plaintiff $112,500.000 in real estate commission to satisfy the amount in controversy requirement.

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. §1332(a)(1). (Notice of Removal at 2.) Defendant has the burden of establishing diversity jurisdiction by a preponderance of the evidence. (*See, White v. Chase Bank USA, NA.,* Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D.W.Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.,* 147 F.Supp.2d 481, 488 (S.D.W.Va.2001) (Haden, J.)).

Upon consideration of Defendant's Notice of Removal and Plaintiff's Complaint, the Court finds that Defendant has established by a preponderance of the evidence the existence of diversity jurisdiction. Therefore, based on the record, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

## ***IV. STANDARD OF REVIEW***

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. (*Id*.) The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

With respect to contract cases, the Fourth Circuit Court of Appeals has noted that "[c]ontract interpretation is a subject particularly suited for summary judgment disposal." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 835 (4th Cir.1999). Initially, it is easy to assume all contract interpretation issues can easily be dispensed on summary judgment. However, the Fourth Circuit has also recognized that "[a]n ambiguous contract that cannot be resolved by credible, unambiguous, extrinsic evidence discloses genuine issues of material fact ... [and] summary judgment is inappropriate." *Sempione v. Provident Bank*, 75 F.3d 951, 959 (4th Cir.1996). The Fourth Circuit further lays out the analysis that must take place in this situation as follows:

> A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible to two reasonable interpretations." *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (1965). The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment

> on that basis. *See Jaftex Corp. v. Aetna Casualty and Surety Co.*, 617 F.2d 1062, 1063 (4th Cir.1980). If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact. *World-Wide Rights Ltd. Partnership v. Combe Inc.,* 955 F.2d 242, 245 (4th Cir.1992).

*Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir.1993). Finally, ". . . If there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact." *Atalla v. Abdul-Baki*, 976 F.2d 189, 192 (4th Cir. 1992) (citations and quotations omitted).

## *V. DISCUSSION*

### *A. Defendant's Motion for Summary Judgment.*

Defendant argues that Plaintiff is not entitled to a commission because the offer it presented for the purchase of Defendant's real estate of $4,500,000.00 did not conform to the terms of the real estate listing contract. (Def.'s Mem. at 1, 5.)[3] First, Defendant appears to argue that because Defendant did not accept the offer and has not sold his property, there is no "accepted purchase price" which would trigger Paragraph 4 of the Listing Agreement. (*Id.*) Second, if the terms "accepted purchase price" and "listing price" are synonymous, Defendant asserts that Plaintiff is not entitled to a commission because the listing price was $20,000,000.00, and the offer, which Defendant did not accept, was $4,500,000.00. (*Id.*) Furthermore, Defendant argues that none of the situations creating a right to a commission under Paragraphs 4(B), (C) and (D) have transpired. (*Id.* at 6.) Therefore, Defendant contends that the Court should grant his motion for summary judgment. (*Id.*)

3 Defendant denies that the real estate listing contract was in effect on April 15, 2011. (Def.'s Mem. at 5.)

***B. Plaintiff's Response in Opposition to Defendant's Motion.***[4]

In response, Plaintiff argues that Defendant is not entitled to summary judgment because "there are at least questions of fact" as to whether Plaintiff is entitled to its commission. (Pl.'s Resp. at 20.) First, Plaintiff argues that, contrary to Defendant's assertion, Plaintiff's commission was not contingent upon a sale or other transfer of the property. (*Id.* at 6.) Plaintiff contends that the Listing Agreement did not provide that its commission would be paid only if a sale was consummated. (*Id.* at 8.) Plaintiff asserts that absent such a stipulation, the "general rule" which provides that "a broker is entitled to his commission when he has procured a purchaser who is ready, willing, and able to purchase the property upon the terms fixed" applies. (*Id.* at 6) (citing *Hensley v. Moretz,* 197 Va. 440, 445, 90 S.E.2d 183, 186 (1955). Therefore, Plaintiff argues that based on the contract executed by Mr. Justice, it is entitled to its commission. Moreover, Plaintiff cites to the Addendum to the Listing Agreement wherein the parties agreed that should the property not sell before the deed of trust becomes due, the ending date of the Listing Agreement, "there will be an auction by the Scotts to satisfy the deed of trust [and] Seller agrees to pay a 5% commission upon sale." (*Id.* at 8-9) (citing "Pl.'s Resp. Ex. C" (Document 15-1 at 31-33) at 32.)[5] Plaintiff contends that the only time its commission is contingent upon the sale of the property is after the termination of the Listing Agreement. (*Id.* at 9.) Moreover, Plaintiff argues that "reading the Addendum to require a consummated sale in all cases would render paragraph 4 nugatory." (*Id.*)

4 The Court has considered Plaintiff's response in opposition, which was filed on the deadline established in the Court's Scheduling Order. (*See* Document 6). Contrary to Defendant's assertion, Rule 7.1(a)(7) of the Local Rules of Civil Procedure does not modify the Court's Scheduling Order. Therefore, Plaintiff's response was timely filed. Also, after careful consideration, the Court declines Defendant's invitation to grant him summary judgment pursuant to Rule 56(c)(3) of the Federal Rules of Civil Procedure.

5 Girlonza and Katherine Jane Scott, owners of Old Spruce Realty, lent Defendant $175,000 for which Defendant gave them a promissory note secured by a deed of trust for Defendant's property. ("Pl.'s Resp. Ex. A, B") (Document 15-1 at 1-29).

Second, Plaintiff argues that the "accepted purchase price" is the Listing Agreement price, and therefore, Defendant did accept the purchase price of 4.5 million when the parties amended the Listing Agreement. (*Id.* at 10.) Plaintiff also argues that price was never modified because listing agreements are required to be in writing, and thus, cannot be modified except by a proper writing. (*Id.*) (citing W. Va. Code §30-40-26.) Plaintiff contends that although the "multiple listing service price" was modified to $20 million in response to a communication by Defendant, the listing contract price was not changed. (*Id.* at 10-11.) In support, Plaintiff argues that because the parties had already modified their Listing Agreement once, and did so by a formal amendment, signed and dated by the parties, and there is no evidence that they agreed to conduct their contract negotiations by electronic communication, the emails concerning the $20 million listing price do not constitute a modification. (*Id.* at 14.) Alternatively, Plaintiff argues that the modification related "*only* to the multiple listing price – *not* to the Listing Agreement price. . ." (*Id.*) Plaintiff contends that the $20 million listing price was "merely an attempt to humor an exceedingly unreasonable and somewhat volatile client [and that] both parties kn[ew] full well that the property would never, ever, sell for that amount." (*Id.* at 15, fn. 2.)

Lastly, Plaintiff argues that it is entitled to its commission because the $4.5 million offer conformed to the contract, and thus, Defendant was not justified in rejecting it. (*Id.* at 15-16.) Plaintiff asserts that although Defendant allegedly imposed conditions related to conservation, they were not contained in the Listing Agreement. (*Id.* at 17.) Therefore, Plaintiff argues that Defendant cannot now rely on them in order to avoid paying Plaintiff its commission. (*Id.* at 18.) Plaintiff stresses that Mr. Justice's offer of $4.5 million did not contain contingencies. (*Id.* at 17)

(citing "Pl.'s Resp. Ex. L") (Document 15-3 at 9-14.) Thus, Plaintiff argues that it did everything required of it under the contract, and accordingly, is due its commission. (*Id*. at 15, 19.)

***C. Defendant's Reply in Support of his Motion for Summary Judgment.***

In Reply, Defendant sets forth three arguments in support of an order granting him summary judgment. First, he argues that Plaintiff's memorandum is untimely, and thus, should not be considered by the Court. (Def.'s Reply at 1.) Defendant contends that because more than fourteen days passed between the filing of his motion and Plaintiff's response, it is untimely under Rule 7.1(a)(7) of the Local Rules of Civil Procedure. (*Id.*) (citing LR Civ P 7.1(a)(7)).[6] Defendant argues that although the Court's Scheduling Order established the last date for filing motions for summary judgment, it does not relieve the parties from complying with the Local Rules' fourteen day deadline. (Def.'s Reply at 2.)

Second, Defendant argues that many facts asserted and disputed in Plaintiff's response are not supported as required by Rule 56(c) of the Federal Rules of Civil Procedure. (*Id.* at 1.) Therefore, Defendant requests that the Court grant summary judgment in his favor pursuant to Rule 56(e)(3).[7] (*Id.*)

Lastly, Defendant argues that Plaintiff is not entitled to a commission under the terms of the Listing Agreement, as amended. (*Id*. at 1.) In response to Plaintiff's argument that the Listing Agreement was not amended to change the listing price to $20 million because there was no "proper writing," Defendant argues that the Listing Agreement is not required to be "signed by the

6 Rule 7.1(a)(7) of the Local Rules of Civil Procedure states in pertinent part: "Memorandum and other materials in response to motions shall be filed and served on opposing counsel and unrepresented parties within 14 days from the date of service of the motion." LR Civ P 7.1(a)(7).

7 Rule 56(e)(3) states in pertinent part: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered unsupported –show that the movant is entitled to it . ." Fed. R. Civ. P. 56(e)(3).

party to be charged." (*Id.* at 5) (citing W. Va. Code § 30-40-26.) Alternatively, Defendant argues that the signing requirement has been met, or Plaintiff is estopped from asserting that requirement based on the communications between Defendant and Plaintiff attached as Exhibits 5 and 6 to Defendant's Memorandum in support. (*Id.* at 6) (citing *Everett v. Brown,* 174 W.Va. 35, 321 S.E.2d 685 (W.Va. 1984)). If those emails do not amend the Listing Agreement for lack of consideration, then Defendant argues that the June 3, 2010 Amendment to the Listing Agreement also fails for want of consideration. (*Id.*) In that case, the original Listing Agreement would govern and the listing price would be "To Be Determined." (*Id.*) Accordingly, Defendant argues that Plaintiff would not be entitled to a commission because no price was determined. However, Defendant maintains that the agreed listing price on April 14, 2011, was $20 million, and thus, Plaintiff is not entitled to any commission based on an offer of $4.5 million.

## *VI. ANALYSIS*

It is undisputed that under the terms of the Listing Agreement, Defendant agreed to pay Plaintiff as compensation for services rendered a percent of the "accepted purchase price" in one of four situations. (*See* Def.'s Mem. Ex. 2.) The Court finds that none of these conditions have been met. Therefore, under the terms of the contract, Plaintiff is not entitled to a fee.

Paragraph 4 of the Listing Agreement states:

> AGENT COMPENSATION: Seller agrees to pay Broker as compensation for services rendered a fee of 5% percent of the **accepted purchase price**, IF A) Broker procures a Buyer during the term hereof on the terms specified herein *or* on any other terms acceptable to Seller(s). B) The Property is sold, exchanged, or otherwise transferred during the term hereof, by Seller, or through any other source. C) The Property is withdrawn from sale, and transferred, conveyed, leased, without the consent of Broker, or *made unmarketable* by Seller's voluntary act during the term thereof or any extension thereof. D) A sale, exchange or other transfer of the property is made by Seller within Six Months after the termination of this

> agreement or any extension thereof, to persons with who Broker shall have negotiated during the term hereof . . .

(*Id.*)[8](emphasis added.) The terms of the contract related to agent compensation are unambiguous. To receive a fee for services rendered, Plaintiff must establish either (A), (B), (C) or (D) under the "Agent Compensation" paragraph in the Listing Agreement. Plaintiff neither argues that subsections (B), (C), or (D) applies, nor has it shown that there are facts in dispute with respect to those provisions.[9] Therefore, Plaintiff's right to a commission rests on subsection (A).

Accordingly, in this case, Plaintiff must establish that there are genuine issues of material fact that Defendant accepted a purchase price and Plaintiff "procure[d] a Buyer during the term hereof on the terms specified herein or on any other terms acceptable to [Defendant]." (*Id.*) The Court finds that the term "accepted purchase price" is clear and unambiguous. "If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W.Va. 97, 101, 468 S.E.2d 712, 716 (W.Va. 1996.) The "accepted purchase price" is the price accepted by *both* the seller *and* the buyer. Accordingly, for there to be an "accepted purchase price," either the seller or the buyer must make an offer to sell or buy at a particular price and the other party has to accept that offer. Contrary to Plaintiff's assertion, the "listing price" agreed to in the Amendment to the Listing Agreement is *not* the "accepted purchase price." (Pl.'s Resp. at 15.) The plain meaning of "list price" is "[a] published or advertised price of goods; retail price." *Black's Law Dictionary* (9th ed. 2009), price. A "list price" is analogous to the "asking price" which is defined as"[t]he

8 The Addendum to the Listing Agreement states that if the property is sold to Jim Justice, the Greenbrier Hotel, or any entity connected with either, the commission will be 2 ½ %. (Def.'s Mem. Ex. 3.)
9 It is undisputed that Defendant's property has not been sold or otherwise transferred. (*See,* Def.'s Mot. at 3; Pl's Resp. at 6.)

price at which a seller lists property for sale, often implying a willingness to sell for less." (*Id.*) These definitions demonstrate that the terms "listing price" and "accepted purchase price" are not synonymous. Moreover, those terms are not "susceptible to two reasonable interpretations." *See, Goodman*, 7 F.3d at 1126. While "listing price" can be thought of as an invitation to submit offers and the starting price for negotiations, the "accepted purchase price" is the selling price.

Plaintiff argues that it is entitled to its commission "whether or not a sale was consummated" because the general rule is that "a broker is entitled to his commission when he procures a person able, ready and willing to purchase the property on the specified terms." *Everett v. Brown,* 174 W.Va. 35, 40, 321 S.E.2d 685, 690 (W. Va. 1984); (*See,* Pl.'s Resp. at 10.) However, the general rule does not apply in every case. Instead, a "broker's right to a commission is controlled by the provisions of the employment contract with the principal." 1-84C *Powell on Real Property*, § 84C.03(1) (Michael Allan Wolf ed., 2012). "Accordingly, the terms of a particular listing may make the broker's right to a commission expressly dependent upon specified conditions, such as consummating the transaction and fully performing the sales contract." (*Id.* at §84C.04(4)). "In such a case, the ordinary theories regarding the broker's right to recover do not apply and the broker is not entitled to a commission unless the specific conditions have been fulfilled." (*Id.*) Under the terms of the Listing Agreement in this case, Defendant would pay Plaintiff a percent of the "accepted purchase price" if one of four conditions applied. Given that Mr. Justice's offer of $4,500,000 was not accepted by Defendant, there was no "accepted purchase price." Therefore, Plaintiff has not established its right to a fee under the unambiguous terms of the Listing Agreement.

The Court also finds that giving the term "accepted purchase price" its plain meaning in Paragraph 4 is consistent with the parties' intent as articulated in the Addendum to the Listing Agreement. The Addendum to the Listing Agreement provides that if the real estate does not sell before the end of the deed of trust (the ending date of the Listing Agreement),[10] then "there will be an auction by the Scotts to satisfy the deed of trust [and] Seller agrees to pay a 5% commission upon sale." (Def.'s Mem. Ex. 3.) Plaintiff argues the only time its commission is conditioned upon the sale of the property is at auction, after the Agreement has terminated, because the "upon sale" language only appears in the Addendum. (Pl.'s Resp. at 9.) The Court finds that this argument is without merit. The fact that the phrase, "upon sale," only appears in the Addendum does not mandate a departure from the plain meaning of the phrase "accepted purchase price" or create ambiguity. Paragraph 4 sets forth the circumstances entitling Plaintiff to a commission, all of which are premised upon Defendant accepting a purchase price, i.e., a consummated transaction. The Addendum similarly provides that Plaintiff's commission is contingent upon the happening of a specified event, i.e., the sale of the land by auction. The parties' agreement to base Plaintiff's commission on "the accepted purchase price" during the term of the Listing Agreement and "upon sale" afterward is not inconsistent or absurd. When land is sold at auction, it goes to the highest bidder, whatever that price may be. There can be no "accepted purchase price" at an auction because the seller's acceptance is irrelevant. Therefore, the fact that the "upon sale" language only appears in the Addendum is of little import. Both the Listing Agreement and the Addendum contemplate the parties' intention of contracting and conditioning Plaintiff's commission upon a sale or transfer. Therefore, given the unambiguous terms of the Listing

10 The Listing Agreement is to remain in effect for two and a half years or until the deed of trust is paid in full. (*Id.*)

Agreement, it is clear that Plaintiff is not entitled to a commission based on a rejected offer of $4,500,000.

According to the plain meaning of the Listing Agreement, Plaintiff is entitled to a commission in four circumstances, all of which depend upon Defendant accepting a purchase price. Because none of those situations occurred, Plaintiff is not entitled to a commission under the contract.

Furthermore, the Court finds that Defendant was under no obligation to accept the tendered offer of $4,500,000, as it was below the listing price of $20,000,000. Even if the Court were to find that listing agreements under West Virginia Code 30-40-26[11] were within the statute of frauds, the October 11, 2010 faxed letter requesting that Plaintiff change the listing price to $20,000,000, and the October 12, 2010 email agreeing to do so, would satisfy its requirements. Defendant's faxed letter is signed and dated and clearly identifies the listing and property at issue. (Def.'s Mem. Ex. 5.) It also identifies the contract at issue and states an intention to be bound. (*Id.*) In response, Plaintiff sent an email advising Defendant that the listing price had been changed to $20,000,000. (Def.'s Mem. Ex. 6.) The email clearly identifies the seller as "[Defendant's] listing agent" and is electronically signed "G. Scott." (*Id.*) The communications and conduct of the parties manifest a "meeting of the minds" and an intent to be bound as to the

---

11 West Virginia Code 30-40-26 states in pertinent part:

> Every broker, associate broker and salesperson owes certain inherent duties to the consumer which are required by virtue of the commission granting a license under this article. The duties include, but are not limited to:
>
> (a) At the time of securing any contract whereby the broker is obligated to represent a principal to a real estate transaction, every licensee shall supply a true legible copy of the contract to each person signing the contract.

listing price of $20,000,000. Based on the foregoing, the Court finds that the above communications satisfy the statute of frauds and create a binding agreement to modify the listing price of Defendant's property to $20,000,000.

Moreover, given the numerous communications between Plaintiff and Defendant, it is abundantly clear that the Listing Agreement price, not only the multiple listing price, had been modified. On April 13, 2011, Plaintiff wrote to Defendant explaining that the paperwork he was sent "was for the purpose of you giving us a price for your property" and asking him to "give an honest price with no restriction attached." ("Pl.'s Resp. Ex. K") (Document 15-3 at 5.) Later that day, Plaintiff asked Defendant: "[i]f I can get a purchase offer of $4,750,000 for your 478 acres on Kate's Mt. White Sulphur Springs, WV, with no restrictions, will you accept [sic] that offer, bearing any other provisions, are acceptable." (*Id.* at 6.) Defendant responded that "such an offer would be very likely accepted, but I can only say I would consider it with great interest." (*Id.* at 7.) Based on the foregoing, it is clear that both parties understood that the Listing Agreement price had been modified to $20,000,000. There would be no need for such communications if Plaintiff believed it already had a listing price of $4,500,000. Because the last agreed upon listing price, prior to Mr. Justice's offer, was $20,000,000, Defendant was within his right to reject the offer of $4,500,000.

Accordingly, the Court finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Thus, Defendant's motion for summary judgment should be granted.

## *VII. CONCLUSION*

Wherefore, based on the findings herein, the Court does hereby **ORDER** that Defendant's *Motion for Summary Judgment* (Document 11) be **GRANTED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 9, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA